Good morning to the judges of the court. The defendant in my case is before the court on an as-applied challenge to the provisions of California Penal Code Section 803, Subdivision G. Recently, in Stagner v. California, the U.S. Supreme Court reversed the conviction of the defendant in that case on an as-applied challenge for similar grounds to those of which my client raises. The difference between Stagner and my client, of course, is that in Stagner, the defendant's original statute of limitations had expired some 22 years prior to the time that the State court prosecution was commenced. In my case, the time frame is a little bit closer. Mr. President, can I focus in on what, to me, is probably the key thing here? I don't think there's any question in the world that if your case came up today, Stagner would plainly, clearly, certainly apply. The question is whether Supreme Court precedent at the time California Court of Appeals made its decision in your case was clearly established. Within the meaning of the AEDBA. Yes. And in particular, I focus on the observation that the court itself made in Stagner that the court had not previously spoken decisively on this matter. And I'm concerned that the court had not previously spoken decisively on this matter.  And I'm concerned that the court had not, in fact, pointed right after that statement to sort of an on-the-one-hand, on-the-other-hand, the Stagner opinion indicates that from Calder versus Bull forward through Youngblood up to the point of Stagner, including Carmel versus Texas, that it has always been the rule that the ex post facto law clause is implicated within the meaning of the four categories that Justice Chase described in 1798. And so I agree with you that they make the statement that we're making the rule now, so to speak. But everything else about the opinion contradicts that statement. And the deciding factor here for me is this. What they describe people versus Frazier as, which is the California case under consideration as an aberration. And they compare it to the long history from Calder forward, and they go into a really a beautiful historical discussion of all the long issues. So does the dissent, by the way. And they pinpoint Frazier as a complete aberration. I believe outside of Frazier there was just one commentator that maybe agreed with the dissent's position. And so on the one hand, they're saying maybe we're making announcing firmly the rule today, but this has always been the rule. Frazier is out of step. We don't even know where it came from or what the basis of it was. So it had to already be there. And that would be my response to that part of it. There's also another case that's on point within the meaning of the AEDPA that cited in Stagner, and that's Weaver versus Graham. That case clearly was decided, I believe, in 86 U.S. Supreme Court that said that when it comes to the retrospective application, extending statutes of limitation that unless a legislature clearly says that we're applying it backwards. In other words, two crimes committed before the effective date of the extension statute, then it's a violation of the ex post facto clause. So within the meaning of the AEDPA, I don't need Stagner. I have Weaver. I have Calder. I have Youngblood. And more than anything else, I have what the Supreme Court of the United States describes in Frazier as an aberration, which is what Frazier is. And so based on that, I meet the AEDPA. And while we're on the subject, I had two other points on the AEDPA. One of them is that the Supreme Court of the United States does not have the authority to determine whether or not a case is subject to independent review by the Supreme Court of the United States if the court is unarrested. I have argued in especially my letter brief, my opening brief to this Court, that this case is subject to independent review by this Court. And this case is somewhat unique from what I see in the existing case law in that regard. Usually we have findings from at least the Court of Appeal or the California Supreme Court or clear back to the trial court. All the Court of Appeal did in this case, the way that it disposed of this whole issue, was to say that the defendant's position has been undercut by people versus Frazier. It's basically a one sentence issuance of its discussion on it. That's no opinion at all. The California Supreme Court issued a postcard denial. And if you go back to the trial court, which I've noted recently in some of these circuits, including the ninth, that the courts are starting to do now, looking for those findings that are binding under the AEDPA. But those are findings of fact, Mr. Myers. Isn't this a pure issue of law that we as a federal court, even under an AEDPA review, determine ourselves? We don't let the state courts tell us what federal law is. Am I wrong? Yes, sir. Okay. I'm thinking about some language I recently read in a case that just came down, Judge Kaczynski's opinion in Baca. And that seems to suggest to me that at least some of the judges of our court believe that on an issue like this, it really isn't up to the California appellate courts to tell us what federal law is. The question is whether or not their determination is contrary to federal law, but that we as a federal court determine in the first instance what federal law is. Well, there's two responses to that. First, the reason I'm making the argument is the attorney general has argued from the district court on up. He continues to argue that the state court made findings that are binding on this court. So that's why I'm making it. I'm throwing you a soft pitch here. And Kaczynski, the opinion I was thinking of from Judge Kaczynski I read yesterday. And I don't know if it's the same case that we're both speaking about. I remember it because I'd actually represented the defendant in it, so it's a small world. But I thought Kaczynski said that under the unreasonable application of standard, the state court can determine federal law, but the issue then becomes, is that an unreasonable determination of federal law? And if in this case there is a question as to what federal law is, isn't it incumbent upon us even under AEDPA review to determine what federal law is so that we can then decide whether or not the California court's determination was contrary to it? Oh, absolutely. And I agree with that. But also what I'm saying, it's obviously unreasonable because that's what Stallgren said about Frazier, and I believe that's what Calder says about Frazier. That's why Frazier's an aberration. I guess your response to Judge Reimer's question was that the principle was so well established. We'll give you some extra time because we've got some questions. The principle was so well established that even though there wasn't a Supreme Court case until Stallgren came along that clearly declared that that's what the law is, that nonetheless we can still make that determination even though Stallgren had not yet been decided when the state and federal district courts ruled on it? If that was true in that narrow context, no, you could not. I have to bring it under clearly established federal law. You have to determine by the Supreme Court. Let me point you to a case. I had my law clerk do a little bit of research on this. The only case I could find that addresses this is a Fourth Circuit case called Boothell v. Nuff at 288 F. 3rd, 571, and that's a 2002 decision of the Fourth Circuit. And in that case, the court struggled with the fact that at the time the Virginia courts or Maryland courts, whichever it were, had addressed the issue that the law had not yet been clearly decided but that subsequently there was definitive federal rulings. And the question was whether or not at the time the state courts decided the question, their decision at that point in time was not contrary to federal law. How do you respond to that? I realize you may not be familiar with that case. No, I'm not, but it sounds like it would support my position. Well, it actually came out the other way. It doesn't help you because the Fourth Circuit in that case said that even though the law was later clarified, if you will, that nonetheless under AEDPA the decision was not an unreasonable application as the courts viewed the law at that time. And I think that's what Judge Reimer was asking. The clarified law. Yeah. Right. Well, as to whether or not it's an unreasonable application, it obviously is. Frazier is an aberration, as Stagner says. Well, it's an unreasonable. See, the difference is it can be unreasonable without being an unreasonable application of Supreme Court law. But it is an unreasonable application of Calder v. Bull. That's what Stagner says. Okay. Now, I realize Stagner is in the context of direct appeal and social order. But you can't mean Stagner without reading it to say that. And look at the history that Stagner goes through. All the authorities. And it points out, Frazier's out there all by itself. To use the words of Justice George Kennard when she dissented, today California becomes the first jurisdiction, state or federal. See, the problem I've got is that the Supreme Court has made it abundantly clear that it's its precedent that matters. And what was uniform at the time was state authorities, maybe circuit authorities, maybe commentators, maybe common sense, whatever. I mean, it's a terrible decision. Okay. I mean, Frazier. But when the Supreme Court itself in reviewing the precise issue says, we've never spoken decisively on this issue, and there's a line of authority that went one way and a line of authority that went the other. What license do we have to say, well, you didn't really mean that? Actually, we think you had been pretty decisive. Well, they had been. And I agree that the court said, made the comment we have not spoken decisively. You want to sign your name for an opinion? But in other parts, in other parts of Stagner, it contradicts that statement. And another part of Stagner talks about the fourth category of laws under Calder. And it goes down that road. And it says, we leave that question for another day. And I think that lends support to my position. But here again, I don't need Stagner. I have Calder. Frazier interpreted Youngblood, and it interpreted it unreasonably. I have Youngblood. I also have Weaver v. Ram that says you cannot retrospectively apply a statute. And one last point on the Weaver issue. This Court has a line of authority that should be looked at. I cited Brichelle. It's in my opening brief. Brichelle cites the Clements and Miller. And what we have here, I respectfully submit to the Court, is some problems, because I'm looking at page 1435 of Brichelle. It's from the Pasadena branch. And it indicates that under the analysis of Youngblood, that the ex post facto clause is not implicated, because those do not involve defenses that constitute alterations in the legal definition of an offense. That's directly contrary to Stagner, Calder, and Youngblood. So I believe, respectfully, that in the long run, whether it's today or later, that there's a problem from the line of authority from this Court in terms of how it determines retrospective application, from at least this point forward, at least from Stagner forward. Mr. Myers, let me ask you a more fundamental question. If you take the four factors that Justice Chase talks about, which of those factors do you contend is most analogous to this situation? I'm having a hard time plugging them in to a very basic question of what do you do under the ex post facto analysis with a cause of action that was dead at the time the January 1, 1997, amendment to the law purported to reach back and revive it? Well, that's easy. You go back to Weaver and a case that's cited in this Court's line of authority, Richardson, Massachusetts v. Richardson, which is the most often cited case for it. And it's cited both ways. Once for the proposition that you can validly extend a statute as long as the prior limitations hadn't expired. And in order to make that pardon. In this case, it had expired. Yeah. Before 97, it had. OK. But we have the issue of 94. And I'm sure the attorney general is going to take the position. OK. I'll give them 1994. OK. I'm concerned about the period of time at the end of 1996. And I don't know who who prepared this. Was it submitted by one of you? The attorney general. But it goes along with my exclusive record, which is cited in my own chart, too. And I'm concerned about the period of time from roughly, I guess it would be June 1996 to December 31, 1996. Because at some point during that time, even the one year notification to authorities extension expired. I think it would have been around November of 1996. Yes. And I argued that. So in the last 60 days or so of that year, Mr. Crummell clearly was beyond any applicable statute of limitation. And the words of Stagner, the ex post facto clause had attached. OK. And if that's the case, then going back to what I thought was a simple question, but apparently it isn't. On January of 1997, when the state urges that the new law somehow revived this moribund criminal cause of action. What which of the four factors should I be looking at under Justice Chase's? Well, this arguments have come all over the board on this. You got my direct brief arguing the fourth category, which Stagner talked about as maybe being implicated. The stock that relies on the second. Just as an aside. The defendant and Frazier also went before the northern district of California. He never went to trial. And the northern district tried to grapple with this because there was an argument he had cited the wrong category. And the court just said, basically, if you get ex post facto clause, that's good enough for the DPA. I don't know. And if you look at the California Court of Appeal opinions, I've cited Dunn and Lynch. So this this demer was originally decided on Sowers, which is now depublished. They're all over the board. They go from the third to the second to the fourth. Concretely, I I still believe maybe because I initially set that out and I don't want to say that I'm wrong, that the fourth category is the one that's implicated the most. But I do also agree that the second category definitely is. And there's a cross over there because you're talking about both a defense and punishment. And the court's saying two things under that category. It's saying you've deprived him of a defense because he could demur, because he did not have a possible punishment at that time. The chase was over and he was free. The right had attached. So I think they're crossing lines. But in the big picture, two, three and four. We have retroactively changed this to a 20 minute argument. I apologize. No, no, no. We've done that. And so if you want to save three minutes that you didn't have for rebuttal, I suggest that might be helpful. OK. I will. All right. Thank you. Thank you. How about we hear from Ms. Butler. Thank you. May it please the court. I'm not being funny. We have we did change. OK. Thank you, Your Honor. May it please the court. Deputy Attorney General Lana Butler, on behalf of respondent. I'd like to pick up on the concern with the December 31st is the first part of my argument. When you look at the date that the complaint was filed, which was on September 14th, 1995, there is support under California law that once the prosecution filed that complaint under the very first version of 803 G, the statute of limitations was indefinitely told. That was. Yes. Forever. Yes. So that you could wait 22 years. No, you couldn't wait. Ending and continue to prosecute. Not under the statute of limitations. Yes. But at that point, that would get into other constitutional problems such as speedy trial. Other provision are we talking about? It's either an ex post facto violation or it is not. Are you now taking the position that the statute extended for all time? Once I complain, a six year statute of limitation. Once that complaint was filed under the statute. And where in the legislative history or in the statute itself? May. Can you point me so that I can clearly determine that that was the intent of the legislature? Well, unfortunately, I don't have any legislative intent, but in viewing the. So as you mentioned, there is none. No, not from the legislative intent. All right. Then why shouldn't I apply the Supreme Court authority that says if you're going to do what you are doing, that statute did the legislature better make that intent clear? Well, they did make that to some extent. They they tried to clean it up in 1997 twice. And I admit that this legislation was very, very difficult. But there is a line of California authority that wants the prosecution. And I'm not talking about a term of 22 years. But once the prosecution files that initial complaint, if it's dismissed, but then refiled that initial complaint told the statute of limitations. Now, if the court doesn't like that argument, I'd like to propose one other one that might be deemed to be a bit more reasonable. We like reasonable arguments. I'll work on that. When that complaint was filed on September 14th, 1995, there's another section of Penal Code 803 under subsection B that specifically states, no time during which prosecution of the same person for the same conduct is pending in a court of this state  So it's my argument to this court that once that complaint was filed on September 14th, 1995, the state is entitled to tolling for the time that that was pending in state court. So it's kind of a almost it's a statutory tolling argument like we see in the one year EDPA? It's exactly that. And what authority do you have to support that other than it's a good argument? Well, Penal Code section 803B. It's specifically allowed for by statute, and there's case law interpreting that as well. Okay, but we've got a constitutional issue here. Sure. The question is whether or not a statute can override the ex post facto clause of the Constitution. I'm not sure how that's interrelated. I mean, your argument, as I now understand it, is that the six year statute of limitations is frozen in time for all days or months that the complaint is pending adjudication in some court in California. And I understand the argument, but beyond the statute, what case law can you give me so that I can have some comfort that you're right? Do you mean California case law that interprets that section that way? It's a constitutional provision we're wrestling with, so what I'd really like is a Supreme Court case. Sure. And maybe if I step back one, that will help a little bit. When we're looking at Stodner, they specifically say, even where courts have upheld extensions of unexpired statutes of limitations, they have consistently distinguished situations where limitation periods have expired. It's my contention that the limitations period here never expired. Well, what about the fact that you abandoned your appeal after the trial court sustained a demur to the information? I'm not sure how that plays into the statute of limitations. How can you continue to toll the statute of limitations when the state has taken affirmative action by abandoning an appeal? Well, it would be my argument that on June 14th, when that appeal was abandoned, the statute of limitations stopped tolling. So it's my argument that from September 14th, 1995, until June 14th, 1996, when the action was pending in state court via California law, that that time was tolling. And where that gets us, when you get tolling from that entire time, that gets us to June 8th, 1997, before the second complaint was filed. Would you concede that if, in fact, the court believes that the statute of limitations had expired and that this defendant was free of any legal ramifications from his conduct for a period of time, that, in fact, to reach back and grab him would be a violation of the ex post facto clause? If that were, in fact, the case, yes, but that is not the case here. There was at no point that this defendant was ever free from prosecution between the time that his cases were pending. If we buy your tolling argument, if we think you're wrong and you don't get any kind of tolling during the pendency of the information, then doesn't Judge Layton's question become relevant? It does become relevant. However, if the court is unwilling to provide tolling, then I would have to revert back to the fact that on September 14th, 1995, the complaint was filed and the prosecution met its burden under the initial version of 803G, which was in place at the time. Okay, but that doesn't help you for the period from June 14th, 1996, to December 31st, 1996. I understand. I buy your argument on the 1994 law. Sure. My heartburn comes from the last part of 1996. Until January 1st, 1997, where the amendment is? Well, there's not much I can do if this court isn't willing to apply the statutes that were on the books at the time that this complaint was filed. Let me ask you this question. Isn't there a fundamental difference between tolling the right to challenge under federal habeas corpus a conviction and tolling for purposes of deciding whether a statute of limitation has run on the ability to bring the charge in the first instance? I'm going to need you to say that one more time. I'm sorry. I'll take another one. Is there a difference that matters in the fact that we are here dealing with a challenge to the power of the state to bring a criminal charge for past criminal behavior versus your argument that we should apply the principles of statutory or equitable tolling that we wrestle with in habeas cases when we're talking about whether an inmate can still challenge an otherwise presumptively valid conviction? Well, they are different, and I think that's just because they're different via statutory authority. What you have in California, it kind of gets down to a notice thing. At the time that this complaint was filed against this defendant, you had 803G in place. The prosecution met its requirements insofar as that. At the very same time since 1984, the 803B provision was also in that very same section. So with that tolling there open and free for everybody to see, there could have been no time in which this defendant could have felt free from criminal prosecution. And I think that this court asked about, well, what was the effect of the dismissal? Wouldn't that have made him felt free from criminal prosecution? And my argument to that is no. When the people failed to file their brief in that court, the court dismissed the appeal, and they issued a remediator that was not a ruling on the merits, that did not dispose of any judgment on the case. The issuance of the remediator merely divested that court of jurisdiction. But at that point, there's no charge pending against the defendant, is there? No, no charge pending, but it's the prosecution's prerogative to refile charges. Here we had a demur, which was sustained. Right. The sustaining of that demur was merely a finding that the accusatory pleadings were defective. It wasn't a judgment on the merits. It was not a final judgment. So your argument is that it was without prejudice to your ability to file a new indictment. Absolutely. It was just a defect in the pleadings. And subsequently, the prosecution remedied that defect by getting the dates of the crimes that were committed correctly later on. And that's why the statute of limitations has never expired. But by the time you did that, that new charge could only be valid if you had the benefit of the 1997 law. Or the tolling. Or the tolling. Right. That extended it. Right, that's true. Otherwise, why would it be unreasonable for Mr. Crummell to think that at the end of 1996 when you abandoned your appeal, that the case was over because it was now way more than six or seven years from the time that the alleged criminal behavior occurred? Well, first, the dismissal did not constitute a final judgment. The sustaining of the demur did not constitute a final judgment. And under that very same section that he was initially prosecuted under, the 803G, there's another provision that says our entire time in state court is tolled. He could not have felt free from this prosecution. And that brings us all the way to June 8, 1997. It gets us both past the filing date and it gets us past the 1997 amendment, which we don't even need. So I think that takes care of that issue a bit. And I also wanted to address, to some extent, the clearly established issue that was brought up. It would be my position that this law was absolutely not clearly established at the time. You have a 5-4 California Supreme Court decision. You had the district court also finding that there was no ex post facto violation. You had a state appellate court looking at this as well. With all these courts examining this case and saying, I'm looking at these four categories. I just don't think that this fits in with any of them. To me, that's res ipsa, that this was not clearly established at the time this was in the state courts. How would you factor in the holding in Brown versus Walker in terms of your calculus here? There the Supreme Court said that the Fifth Amendment's privilege against self-incrimination does not apply after the relevant limitations period has expired. Isn't that a pretty strong message that says to a potential criminal defendant that they don't have the protection of the Fifth Amendment anymore because they don't need it? Absolutely. And isn't that a fairly clear message as to what the Supreme Court's thinking is about ex post facto protection? But under the facts of this case, the period never expired. I get back to my previous question. I think the state concedes that if the statute of limitations had expired, Stagner cannot be overcome and that the criminal conviction should be overturned. If this court finds that the statute of limitations expired, that the California law that provides for tolling is somehow inapplicable and it expired sometime either, I would guess, on September 6th or September 7th, 1996, under Stagner, if it's expired, you cannot revive it. Absolutely. But I think that takes a pretty big leap and some disregard of California law to get there. Are you conceding that the rule articulated in Stagner was clearly established at the time the California Court of Appeals made its decision? No, I don't think so. I think that the case that was just brought up was not on point. So when you answered Judge Layton's question about whether Stagner would control under the circumstances he hypothesized, were you answering it with respect to today? I'm sorry, what do you mean with respect to today? Straight up. Applying Stagner to this case. Straight up without going through the EDPA lens. Yes. Yes. Without that. But you concede that Stagner does say that, quote, given the apparent unanimity of pre-Fraser case law, legal scholars have long had reason to believe this matter settled. I think that reason to believe is exactly the problem. Just because they had reason to believe, that's not very strong language. It didn't say legal scholars have had the absolute support to come to the same conclusion. And when we're under the EDPA language, it's clearly established federal law, and reason to believe does not equate to clearly established. The only problem I have with your argument is that this is a pretty fundamental constitutional principle. It goes to the very, as I said earlier, it goes to the very power of the court to hail a defendant into court for an old crime. And why isn't Judge Layton correct when he says that we should read that language in Stagner as essentially acknowledging that everybody knows that the ex post facto clause forbids a legislature from reviving an otherwise expired claim. Well, I mean, A, this isn't an expired claim. I understand your argument there if we buy your tolling argument. Sure. And apparently not everybody knows that because four judges of that court disagreed. So that was a very close decision. All these cases have been very, very close decisions. And based on that and the numerous times that courts have looked at this particular case, it seems that under EDPA, this was not clearly established at the time, and the court should be giving deference to those state court findings. As a trial judge, I'm interested in your tolling argument because I must confess when I looked at this case, I thought that the statute was referring to a calendar year. From the time that a victim came forward, there was basically a calendar year in which you could file charges. To where they did file charges. But we have a habit sometimes on stale cases of statistically staying them, and they simply go off calendar. I'm wondering what the world would look like if you could simply file a charge and then take no action because you didn't have evidence or whatever, and into the fullness of time keep somebody on the hook for an old crime. Is that possible under California state law? No, absolutely not. And the statute is clear that for the time pending in state court, at some point the defendant is going to move to dismiss for failure to prosecute. At some point his speedy trial rights are going to become problematic. There are other constitutional protections. So do you get a year and 70 days then if you file the charges on the last day of the year and the Speedy Trial Act requires the defendant be brought to trial for 70 days and no action is taken by the defendant to toll it, the one year really means a year and 70 days? I'm not sure where Your Honor is getting 70 days from. I'm just wondering how long that the state can sort of keep treading water to defeat the one year statute of limitations from the date a victim comes forward. I mean, how far into the ether does that period go? I think a lot of that depends on speedy trial rights and the defendants asserting that. So there are protections there. In no means am I suggesting that the prosecution would be permitted to file charges in 1995 and then do nothing until 2025. There are other things that would come into play which just simply don't here. So unless the Court has any further questions, I see I'm getting pretty close to my time. Okay. Thank you very much. Very briefly, a couple of points. Something I heard that I really wasn't sure of, the original complaint, the very first one that was filed and dismissed apparently alleged the statute of limitations or time of commission as a crime that was outside the statute of limitations, the six year statute. And that changed later with the second prosecution. I think that's very significant to say we're going to go back to January 1st, 1994, because if the original complaint said that the statute had expired, which is basically what I've heard. And the reason I'm not sure about this, I'm just a public defender. I get certain portions of the record from my clients. He's after the back from prison. And I never got the original complaint. I don't know if the court has it or not. So if that's true, we don't even get to 1994. They're just done because to come back later and then post revive it after the statute run, because we know it ran by May of 1994, according to how things came out of trial. The second point about tolling the statute she's referring to, she is correct on that. During trial court proceedings, we told. So we told a period of a total of three months. You don't toll an appeal. Judgments are presumed to be final. That's the rule that this court and all court of appeals try to teach trial courts. That's presumptions that we deal with. And so when they say they took an appeal trying to reverse a judgment of the trial court, that that doesn't toll under the in the manner that she says it does. And for purposes of the one year statute for seeking habeas relief, because until we get a final judgment or final decision of the California appellate courts, all of that period of time during which the litigation appellate process is going forward under the statute is told. Yeah. So so if if her analogy is correct, if there if there is no difference in response to my question, between tolling for purposes of challenging a prior conviction or tolling for purposes of initiating a criminal prosecution, then that period would be told until such time as a final mandate. And I'm not sure what California calls it, but until a final mandate issues from the last appeal. Judge Tolman, the difference is when you're talking about the AP, AEDPA tolling, you're talking about the appellate context. You're talking about once it goes to the California Supreme Court and tolling beyond that. You're talking about appellate tolling. The statute she refers to, unlike the AEDPA statute, which refers to processes in a court of appeal, addresses itself to state court proceedings, meaning the trial court proceedings. And so that's how I find a fundamental difference. I mean, it doesn't make real sense to me, because otherwise you'd never have to have tolling. I mean, are you saying as long as there's no appeal? Yeah. If you have a state. It doesn't make sense. If they had done nothing, if the demur was simply sustained and they just went away. And that would be the end of the case. They couldn't come back 22 years later and say we're going to. The statute makes no sense if it doesn't include a provision for appeal. Why else is it there? Well, I would respectfully disagree. No, but why? Well, it's fair to say when we're prosecuting you during the time that we're prosecuting you actively. Yes. Then the statute of limitations is told. But there's no need for it to be told if the prosecution that has been initiated is completed and runs its course. There's no point in tolling. You can't re-prosecute. So the provision for tolling must contemplate something besides that. I am aware of no case that says that. And also wouldn't say that the provisions of 803 or 802 or any of them were drafted with any kind of precision. That's why we're here today. So your answer to my question that I asked of Ms. Butler is that there is a difference between ADPA tolling for purposes of challenging a conviction and tolling of a statute of limitation for bringing an initial criminal proceeding. Well, absolutely. Because in AEDPA, you're talking about post-conviction appellate state process from court of appeals to the California Supreme Court. And you're relating tolling to there. You're not talking about anything that happened in the trial court of the AEDPA. That's not a fact. I think I know the answers. But do you have any case that you can cite? Well, no, I don't. It's an interesting issue. I know that I briefed cases recently in the courts of appeal regarding situations where our clients, our convictions are reversed on appeal. And then they come back to the trial court and they're convicted again. And the California Supreme Court has ruled they're not entitled to 4019 credits, which are a higher rate of credit. All they're entitled to is a lower rate of credit if it's a serious or violent felony under the three strikes law because they're taking the position that the time between the reversal of the conviction and the reinstatement, the new conviction, basically doesn't change what happened in the first place. The best I can do is analogize it to that. Because otherwise, if that was true, if her interpretation of this statute was true, my clients need to get some 4019 credits because it would, I guess, toll. The last point I have and a point that she made, after December 15th, they didn't have to take an appeal. They could have filed a new complaint. Under California, there's a two-dismissal rule. Sometimes they're free. And I thought I heard her say at some point they realized they had the time frame wrong because they initially filed it and the demur was rightly granted because they were outside the statute under the interpretation of salaries in the trial court. So at some point along this period where they apparently did nothing but file one piece of paper, the notice of appeal did absolutely nothing until the DCA had enough to dismiss. Somebody must have realized we have different dates. And I admit the dates are different. They came out of trial that they were within the period by three months. But that happened long after the fact. So why wasn't a complaint filed? Are you now talking about whether or not the crime occurred after the holidays? Yeah. See, that didn't. January to the spring of. Yeah. That came out of trial. That was a close call. But I'm saying when they initially filed the first complaint, from what I've just done, from my understanding today, the way they initially alleged it, more than six years had elapsed. They didn't have the same time period that they finally came out of trial. So. And if that's true, they don't get the benefit of January 1st, 1994, under Stockner, under Calder and under all that. And the last thing I'll leave the court with in terms of the AEDPA. Now, people versus none. People versus Lance decided in my letter brief to the court. Our California courts of appeal were relying on Collins versus Youngblood and Calder when they reached the conclusion, contrary to Frazier, that a clearly established U.S. Supreme Court authority says you can't do this. So otherwise we wouldn't have had the war between the legislature and the courts of appeal, as the judge in this case put it, the trial judge, unless we had that clearly established law. And that's the way Boone saw it. That's the way Mint saw it. And Sauer saw it. And so it was there. It's been there. And I'll submit it on that. Okay. Thank you very much. I appreciate the argument from both of you, and the matter just argued will be submitted.
judges: Rymer, Tallman, Leighton